No. 90-573

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

KENNETH DOIG,

Claimant and Appellant,

-v-

WILLIAM GRAVELEY,
          Employer
    and

STATE COMPENSATION INSURANCE FUND,

Defendant and Respondent.

**FILED**

APR - 2 1991

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   Workers' Compensation Court
               The Honorable Timothy Reardon, Judge presiding.


COUNSEL OF RECORD:

          For Appellant:

               Norman H. Grosfield; Utick & Grosfield; Helena,
               Montana

          For Respondent:

               Elizabeth A. Horsman; State Compensation Mutual
               Insurance Fund; Helena, Montana


                    Submitted on Briefs:   February 21, 1991

                         Decided:   April 2, 1991

Filed:

_____
                Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

Claimant, Kenneth Doig, appeals from the decision of the Workers' Compensation Court finding him to be an independent contractor and denying him workers' compensation benefits. We affirm.

The issues for our review are:

1. Did the Workers' Compensation Court err in its finding that Mr. Doig was an independent contractor rather than an employee at the time of his injury?

2. Did the Workers' Compensation Court err in its finding that Mr. Doig was not a statutory employee under the provisions of § 39-71-401(3), MCA?

Mr. Doig, a horseshoer, advertised his availability as an experienced horseshoer in veterinary clinics and feed stores in and around Deer Lodge, as well as in the Western Shopper newspaper. Mr. Doig set his own appointments, and shod the horses where they were kept, not at his own home. He was paid on a per horse basis in the amount of $30 per horse for shoeing and $20 per horse for trimming. He had not applied to the Division of Workers' Compensation for a certificate to designate himself as an independent contractor.

Mr. Charles Graveley, of the Graveley Ranch, called Mr. Doig and arranged for him to come to the ranch to shoe three horses on May 21, 1988. This was the first time Mr. Doig had ever shod any of the Graveley Ranch horses. Mr. Graveley caught the horses and tied them to the corral for Mr. Doig to replace the shoes.

2

One of the horses, Hobo, had been diagnosed as having navicular disease, which is a hoof condition not uncommon in Western Montana. Mr. Graveley conveyed brief instructions to Mr. Doig that he be shod "short in the front and long in the heels."

When Mr. Doig began his work with Hobo, Mr. Graveley left to buy horseshoes. When he returned to the ranch, he found Mr. Doig dazed, wandering around looking for a lens to his glasses. Mr. Doig told Mr. Graveley he had been kicked by the horse. Mr. Doig then went back to work finishing Hobo and filing the hooves of the second horse. Mr. Graveley stayed with Mr. Doig because of concern for his injury. Mr. Graveley did not assist with the horseshoeing, but only talked to Mr. Doig and was available if the second horse gave him trouble. Mr. Doig was trimming the third or fourth leg of the second horse when a sharp pain in his head caused him to fall to his knees. Mr. Graveley immediately drove him to the hospital in Deer Lodge.

Mr. Doig was 34 years old at the time of the accident. The injury has left Mr. Doig confined to a wheelchair and totally disabled.

Mr. Doig filed a claim for workers' compensation benefits with the State Compensation Mutual Insurance Fund as an employee of the Graveley Ranch. Liability was denied, based on its conclusion that Mr. Doig was an independent contractor at the time of the accident. Mr. Doig filed a request for rehearing in the Workers' Compensation Court claiming that he was an employee rather than an independent contractor. A rehearing was denied. Mr. Doig appeals the Workers'

3

Compensation Court's decision.

I

Did the Workers' Compensation Court err in its finding that Mr. Doig was an independent contractor rather than an employee at the time of his injury?

This appeal presents both questions of law and questions of fact. The parties agree that the proper standard of review in such cases was set out in Solheim v. Tom Davis Ranch (1984), 208 Mont. 265, 272, 677 P.2d 1034, 1037-1038:

> Where both factual determinations and legal conclusions are challenged, two standards of review apply. To the extent that factual determinations are questioned, we must apply the test set forth in Sharp and defer to the fact-finder where substantial evidence exists to support the determinations. When, however, an issue raises only a question of law, this Court is free to reach its own conclusions from the evidence presented.

Mr. Doig maintains that the Workers' Compensation Court erred in concluding that he was an independent contractor rather than an employee. The applicable statute, § 39-71-120, MCA (1987), defines "independent contractor":

> (1) An "independent contractor" is one who renders service in the course of an occupation and:
>
> (a) has been and will continue to be free from control or direction over the performance of the services, both under his contract and in fact; and
>
> (b) is engaged in an independently established trade, occupation, profession, or business.
>
> (2) An individual performing services for remuneration is considered to be an employee under this chapter unless the requirements of subsection (1) are met.

The key element is the control factor. There are four factors to consider when determining a right of control in a given situation:

4

(1)   Direct evidence of right or exercise of control;

(2)   Method of payment;

(3)   Furnishing of equipment; and

(4)   Right to fire.

Sharp v. Hoerner Waldorf Corp. (1978), 178 Mont. 419, 584 P.2d 1298.

## Direct Evidence of Right or Exercise of Control

Mr. Doig maintains that the instructions as to how Hobo should be shod "short in the front and long in the heels" established that Mr. Graveley was in control.  He also contends that the fact he would always defer to the wishes of the horse owner and proceed only on the instructions of the rancher revealed control by Mr. Graveley.

State Fund maintains that the instructions as to how a horse should be shod are nothing more than control over those few matters necessary to insure a satisfactory end result.  State Fund further maintains that the fact that Mr. Doig was hired on a one-day, 2-3 hour horseshoeing job where there was no evidence that a continuing employment relationship was intended to exist past the completion of the job, is indicative of an independent contractor. We agree.   Therefore, we conclude that there is substantial evidence to support the conclusion of the court that the first factor indicated an independent contractor status.

## Method of Payment

Mr. Doig maintains that his method of payment on a per horse basis is an indication of employee status.  This method of payment

5

is the standard for horseshoers.

State Fund urges that given the method of payment and the fact that this was the only time Mr. Doig had worked on the Graveley Ranch, it cannot be said the Mr. Doig was under the control of Mr. Graveley.

The Workers' Compensation Court held that there was no payment on a per-hour, per-week or per-month basis that would indicate an employee status, and that "payment on a completed project basis is consistent with, but not conclusive of, an independent contractor status." The court also found that at the time of the injury, Mr. Doig had shod one horse and trimmed all four feet of another horse. Mr. Graveley paid Mr. Doig on the per-unit basis of one horse shod and one horse trimmed. We conclude that substantial evidence supports the Workers' Compensation Court's conclusion.

### Furnishing of Equipment

Mr. Doig maintains that the type and manner of the equipment furnished for the shoeing operation, such as those provided by the ranch in this case, are of significant importance as a contribution by the horse owner. He argues that while he did bring his own tools to perform the services, these items were of no greater significance than the facilities, halters, and shoes provided by the Graveley Ranch. Mr. Doig relies on Larson's The Law of Workman's Compensation, by Arthur Larson, for the proposition that when an employer furnishes valuable equipment, an employment relationship almost invariably exists.

State Fund maintains that the only "tools" or "equipment"

6

allegedly provided by the Graveley Ranch are generic ranch items, not analogous to the professional tools Mr. Doig brought to the ranch. The Ranch provided a halter and lead rope, a corral fence and horseshoes. State Fund urges that the items provided by the Graveley Ranch are not "equipment" as contemplated by the Larson treatise. Mr. Doig provided nippers, a nail clincher, a hammer, anvil, nails, rasps and horseshoeing chaps. State Fund argues that the tools provided by Mr. Doig himself are the tools of the trade.

The fact that a horse owner supplies a halter for his horse is not indicative of supplying "equipment" for the horseshoer. The halter itself is not part of horseshoeing equipment anymore than a corral or enclosure that the horse is kept in. We conclude that substantial evidence exists to support the Workers' Compensation Court's holding that the tools necessary to perform the service were furnished by Mr. Doig, indicating an independent contractor relationship.

## Right to Fire

Mr. Doig maintains that the right existed for either party to end the operation without liability, a fact not consistent with the concept of an independent contractor relationship. He argues that Mr. Graveley could have terminated the horseshoeing for any reason with no obligation to pay.

State Fund maintains that Mr. Doig's argument disregards the nature of both the horse-owner's property interest and of the horseshoeing operation itself. State Fund contends that an incompetent horseshoer can lame a horse. It argues that a horse

7

owner cannot be expected to stand quietly by while a horseshoer lames his horse. State Fund maintains that the Workers' Compensation Court correctly held that an independent contractor can be terminated if the service are not being performed to the accepted standards. We agree. We affirm the Workers' Compensation Court's conclusion that the right to terminate services of the claimant was consistent with independent contractor status.

## Independent Occupation

The second part of the test set forth in § 39-71-120(1)(b), MCA (1987), requires that the worker must be engaged in an independently established trade, occupation, profession, or business. Mr. Doig maintains that as part of his general ranch work throughout his working life, he has done horseshoeing. Mr. Doig argues that as a part-time horseshoer, he was not engaged in an independent occupation.

State Fund maintains that there is substantial evidence to support the Workers' Compensation Court's finding that horseshoeing is itself an independently established trade. State Fund cites Taylor v. Local No. 7, Int'l Union of Journeyman Horseshoers (4th Cir. 1965), 353 F.2d 593, for its holding that horseshoers were not employees of the horse trainers and owners. State Fund contends that Mr. Doig was clearly engaged in an independent trade or business as an independent contractor because he: (1) publicly advertised his services as a horseshoer; (2) brought his own tools to the work place; (3) maintained an appointment book in the course of his business; (4) had no social security, FICA or other

8

deductions or withholding by Mr. Graveley or any of the other ranchers for whom he had shod horses; and (5) continued horseshoeing in the area prior to his injury even though he had begun fill-time work at the Montana State Prison two weeks before his injury. We agree with the Workers' Compensation Court's conclusion that Mr. Doig met the independent occupation test.

We affirm the conclusion of the Workers' Compensation Court that Mr. Doig was an independent contractor at the time of his injury.

## II

Did the Workers' Compensation Court err in its finding that Mr. Doig was not a statutory employee under the provisions of § 39-71-401(3), MCA?

Section 39-71-401(3)(a), MCA (1987), provides:

(3) (a) A sole proprietor or a working member of a partnership who holds himself out or considers himself an independent contractor . . . <u>must elect to be bound personally and individually</u> by the provisions of compensation plan No. 1, 2, or 3, <u>but he may apply to the division for an exemption from the Workers' Compensation Act for himself</u>. (Emphasis added).

Mr. Doig contends that during the 1983 legislative session, the Division of Workers' Compensation attempted to address the problem of independent contractors who seek to become employees after an industrial injury. He urges that it was the position of the Division that the solution to this recurring problem was to establish a system whereby any person who wished to be exempt from workers' compensation coverage had to seek certification from the Division as an independent contractor. If so certified, the person

9

in question would then be exempt from coverage under the Workers' Compensation Act. Mr. Doig urges that if a person hired someone to do work for him or her, such person would be required to ask if the prospective worker had a certificate of exemption as an independent contractor or could show proof of coverage.

In the present case, Mr. Doig did not have coverage on himself, and did not have a certificate of exemption from the Division. Mr. Graveley did not inquire as to Mr. Doig's exemption or coverage. Therefore, Mr. Doig maintains that he is to be treated by the insurer as an employee.

The Workers' Compensation Court addressed this issue as follows:

> As enacted, Section 39-71-401(3)(a), MCA (1987) allows an independent contractor to elect to be bound by the provisions of compensation plan No. 1, 2, or 3, or he may apply to the Division for an exemption from the Workers' Compensation Act for himself. Nowhere in the statutes or the Division rules is the independent contractor exemption from workers' compensation coverage made specifically mandatory in order for independent contractor status to exist. No Court has held that any independent contractor without such a certificate is automatically an employee and such an interpretation is not warranted from a reading of the statute or its history since enactment.
>
> Administrator Gary Blewett's statement in favor of HB 277 suggested a result which was not achieved by the Division of Workers' Compensation rules adopted to implement this legislation. Such administrative ruled did not create a "statutory employee" if an independent contractor failed to obtain a certificate of exemption in ARM 24.29.706 (Eff. 6/30/84). In fact, the opposite result was reached in ARM 24.29.706(5), which states:
>
>> The exemption provided for under this rule is for workers' compensation purposes. The fact that an independent contractor neither applies for nor receives an exemption does not imply independent contractor status.

10

Had the legislature intended in 1983 . . . that an independent contractor exemption was to be mandatory, it could have been clearly stated. Absent such specific language in Sections 39-71-401, 39-71-118 and 39-71-120, MCA, this Court must conclude that failure to obtain an independent contractor exemption does not create a "statutory employee" by operation of law.

As the lower court explained, the failure to obtain a certificate of exemption did not specifically create a statutory employee. In the construction of a statute, a judge is "simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted . . . " § 1-2-101, MCA. We agree with the interpretation of the Workers' Compensation Court. We hold that the Workers' Compensation Court did not err in its finding that Mr. Doig was not a statutory employee under the provisions of § 39-71-401(3), MCA.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

11

Justice William E. Hunt, Sr., dissenting:

I dissent. I do not agree with the analysis and result of this case. I would hold that Mr. Doig was not an independent contractor but was an employee of Mr. Graveley. I would reverse the Workers' Compensation Court.

_____
                Justice