No. 91-558

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

JAN M. LOOS for Gary E. Loos,
Deceased,

      Petitioner, Respondent and
      Cross-Appellant,

  -vs-

JIM WALDO, (f/d/b/a Waldo's Acton Bar),
      Defendant, Appellant and
      Cross-Respondent,

  and

UNINSURED EMPLOYERS FUND,
      Defendant, Appellant and
      Cross-Respondent.

**FILED**

MAR 1 7 1993

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    State of Montana Workers' Compensation Court
                 The Honorable Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

      For Appellant Waldo:

          Phillip R. Oliver, Oliver & Graves, Billings,
          Montana

      For Appellant Loos:

          Randall G. Nelson, Felt, Martin, Frazier & Lovas,
          Billings, Montana

      For Respondent:

          David A. Scott, Dept. of Labor & Industry, Helena,
          Montana

Submitted on Briefs:  October 29, 1992
           Decided:  March 17, 1993

Filed:

_____
          Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

This action arises from a claim for worker's compensation death benefits filed by Jan M. Loos against Jim Waldo, f/d/b/a Waldo's Acton Bar, and the Uninsured Employers' Fund, Department of Labor and Industry (UEF). On appeal is a judgment of the Workers' Compensation Court, finding that Gary Loos was an employee of Waldo's Acton Bar and granting death benefits to Jan Loos. Affirmed.

The issues for our review are:

1. Whether the Workers' Compensation Court erred in determining that Gary Loos was an employee of Waldo's Acton Bar, rather than its proprietor.

2. Whether the Workers' Compensation Court erred in denying Jan Loos' costs and attorney fees.

On September 28, 1988, an armed robber shot and killed Gary Loos while Loos was working at Waldo's Acton Bar in Acton, Montana. His death left Jan Loos a widow.

Two weeks earlier, on September 14th, Waldo and Loos entered an oral lease agreement whereby Loos would purchase the liquor license and inventory of Waldo's Acton Bar. They also agreed that Loos would lease the realty and the bar's equipment. Along with the inventory, Waldo gave Loos 790 dollars cash to cover payouts from the poker machines and generally run the bar. Loos had not paid for the inventory or made a lease payment before his death.

Initially, Loos planned to get an advance from his trust fund to pay for the bar. When his plan fell through, he and Waldo

2

agreed that he would pay Waldo for the inventory and liquor license out of the bar's profits.

Waldo testified that he agreed to sell the liquor license to Loos for one dollar. Apparently, they planned to put the license in escrow and if Loos defaulted on the bar lease, the license and the bar would revert back to Waldo. The testimony indicates that the parties intended to draft a written lease agreement and formally transfer the liquor license in the near future. Yet when Loos died, the license was still in Waldo's name.

Before September 14th, Loos was a frequent patron of the bar, but did not work there. On that date, Loos and Waldo's wife took inventory of the bar's saleable items. Thereafter Loos operated the bar. He hired and paid employees, kept the books, paid the bills, contrived promotions, extended credit, received a share of the poker machine profits, and kept the profits of the bar. Because the business was changing hands, meter readings were taken on the electric meter, propane tank, poker machines and keno machines.

Loos' name was added to the checking account. Waldo relinquished control over the bar keys and check book to Loos. Waldo's name remained on the account, but Loos wrote all the checks between September 14th and the date of his death. During that time, the creditors sent the bills to Loos rather than Waldo.

After September 14th, Loos represented to friends and business associates that he had leased the bar from Waldo. He told the Coca-Cola distributor that he had leased the bar and would assume

3

responsibility for all future bills. He borrowed shot glasses from another bar for his grand opening. He told the vending machine repair person that he had leased the bar and would be in charge of vending machine matters. In addition, Jan Loos told a bank officer that she and her husband were leasing the bar from Waldo.

On the other hand, Waldo told a State Compensation Insurance Fund field investigator that Loos had attempted to buy the bar, but had been unsuccessful so Loos was managing the bar instead. The field investigator had preconceived that Loos was an employee before the investigation.

Law enforcement officers examined the scene after Loos' death and found 1,255 dollars cash remaining in the bar. Waldo testified that he kept the money to pay Loos' bills and that he gave the remaining money to Jan Loos.

The bar closed following Loos' death. A few days later, Waldo resumed operating the bar and paid Loos' business creditors.

A claims examiner from the compliance bureau of UEF investigated to determine whether Waldo owed any fines or penalties for not having worker's compensation insurance on Loos. She concluded that Waldo did not owe anything because there was no evidence that Loos was an employee.

After Loos' death, Jan Loos submitted a claim for workers' compensation death benefits. In November 1988, the UEF denied her benefits on the grounds that her husband was not an employee at the time of his death.

Jan Loos then requested administrative review of the UEF's

4

decision. After a contested hearing, a hearing examiner from the Department of Labor and Industry denied Jan Loos' claim, holding that Loos was not an employee at the time of his death.

On October 9, 1990, the Workers' Compensation Court reversed and dismissed the hearing examiner's order. The court stated that the Department did not have jurisdiction over the issue. Jan Loos' attorneys then filed a request for mediation. After a mediation conference, the workers' compensation mediator filed a recommendation and report stating that Loos was not an employee at the time of his death.

Jan Loos then filed a petition with the Workers' Compensation Court. The court held that upon his death Loos was an employee of Waldo's Acton Bar, thus Jan Loos was entitled to Workers' Compensation benefits. The court also held that Jan Loos was not entitled to attorney fees because the insurer did not act unreasonably in denying coverage. This appeal followed.

I.

Did the Workers' Compensation Court err in determining that Loos was an employee of Waldo's Acton Bar, rather than its proprietor?

This issue presents questions of both law and fact. Where the parties challenge both factual determinations and legal conclusions of the Workers' Compensation Court, two different standards of review apply. Doig v. Graveley (1991), 248 Mont. 59, 61, 809 P.2d 12, 13. We defer to the fact finder where substantial credible

5

evidence exists to support the court's factual determinations. However, where we face an issue that raises only a question of law, we are free to determine whether the court was correct in its conclusions. Doig, 809 P.2d at 13.

Waldo and UEF contend that the Workers' Compensation Court erred by exclusively using the statutory independent contractor test in determining that Loos was an employee rather than a proprietor. This issue presents solely an issue of law, so we draw our own conclusions as to whether the court was correct. See Doig, 809 P.2d at 13.

The Workers' Compensation Act generally does not cover a person who is a sole proprietor or a working partner. Section 39-71-401(2)(d), (3)(a), MCA. There is no statutory definition of sole proprietor.

In determining that Loos was an employee, the court used the independent contractor test by analogy, because there is no test to determine whether a person is a sole proprietor. Cf. § 39-71-120(1), MCA, (elements necessary for independent contractor status); Sharp v. Hoerner Waldorf Corp. (1978), 178 Mont. 419, 424, 584 P.2d 1298, 1301-02, (four factors used to determine freedom from an employer's control).

The court did not balance the freedom from control factors, rather it strictly adhered to the statute and case law delineating the independent contractor test. Under the statute, a person who performs services for remuneration is an employee, unless that person meets the elements of an independent contractor. See § 39-

71-120(2), MCA. The case law holds that a finding of independent contractor status requires a convincing accumulation of the freedom from control factors and the statutory elements. See, e.g., Sharp, 584 P.2d at 1302. In contrast, employee status "can if necessary often be solidly proved on the strength of one of the four [freedom from control factors]." See, e.g., Sharp, 584 P.2d at 1302.

The court concluded that it was bound by the constraints of the independent contractor test. We hold that the Workers' Compensation Court did not err by exclusively using the independent contractor test in determining that Loos was an employee rather than a sole proprietor.

In ruling on a related issue, the court found that Waldo did not sell the bar to Loos and did not intend to sell it. Waldo and UEF contend that the court's finding was erroneous. Because the issue presents a question of fact, we will uphold the Workers' Compensation Court's decision if substantial credible evidence supports it. See Doig, 809 P.2d at 13.

Waldo originally thought that Loos would purchase the inventory items on a cash basis. They did not enter into any written agreements. Waldo testified that because Loos could not acquire the necessary cash, they agreed Loos would make payments on the inventory along with lease payments on the building and equipment. They did not set a price, however, and Loos did not pay for the inventory.

Waldo owned the liquor license which permitted the sale of alcohol on the premises of Waldo's Acton Bar. He neither applied

7

with the Department of Revenue to transfer the license, nor assigned the license to Loos. Further, Loos did not apply for temporary authority to sell liquor pending final approval of a transfer of the license. See § 16-4-404(6), MCA; 42.12.208, ARM. Thus Waldo retained any authority the bar had to sell alcoholic beverages.

We note that it is a felony to sell alcoholic beverages without a liquor license. Section 16-6-302, MCA. Loos could not have run the bar without selling alcoholic beverages and he did not have a license to do so. Therefore, if Loos owned the bar he could not have run it without committing a felony.

Waldo gave Loos 790 dollars cash as part of the inventory. After the robbery, 1255 dollars remained in the bar. Although Waldo testified that it belonged to Loos, he kept most of the money for bar operations rather than giving it to Loos' widow.

Finally, the bar's checking account continued after the bar's alleged sale and Waldo remained an owner of the account. Following Loos' death, Waldo resumed operating the bar and paid Loos' business bills.

We hold that there is substantial credible evidence to support the Workers' Compensation Court's determination that Waldo did not sell the business to Loos.

Moving to another closely related issue, UEF and Waldo contend that Waldo's ownership of the bar's liquor license did not constitute a right to control Loos under the independent contractor test. They argue that the control factor is not a mere right to

8

control, but the right to control the details of the person's work. See Sharp, 584 P.2d at 1301. They urge us to apply the reasoning of a case wherein we said statutes "must not be distorted to allow persons who are truly independent in their operation to be held employees merely for tax purposes and resulting benefits derived from an employer-employee relationship." St. Regis Paper Co. v. U.C.C. of Mont. et al. (1971), 157 Mont. 548, 552, 487 P.2d 524, 526.

The issue of whether Waldo's ownership of the liquor license gave him control over Loos' work presents a question of fact. Consequently, we will defer to the Workers' Compensation Court if substantial credible evidence supports its determination. Doig, 809 P.2d at 13.

The law governing whether a person is an employee or an independent contractor is well settled. The Workers' Compensation Code defines independent contractor as follows:

(1) An "independent contractor" is one who renders service in the course of an occupation and:
(a) has been and will continue to be free from control or direction over the performance of the services, both under his contract and in fact; and
(b) is engaged in an independently established trade, occupation, profession, or business.
(2) An individual performing services for remuneration is considered to be an employee under this chapter unless the requirements of subsection (1) are met.

Section 39-71-120, MCA. We have held that this statute creates a two-part test, both parts of which must be met to classify a person as an independent contractor. First, the person must be free from the employer's control. Second, the person must have an independently established occupation. Sharp, 584 P.2d at 1301.

9

We use four-factors to determine whether a person is free from an employer's control:

    (1) Direct evidence of right or exercise of control;
    (2) Method of payment;
    (3) Furnishing of equipment; and
    (4) Right to fire.

Sharp, 584 P.2d at 1301-02.

The last three factors tend to indicate that Loos was not Waldo's employee. First, Loos was not to receive any type of payment directly from Waldo. Rather, Loos' remuneration would have come from the profits on inventory sales after his payments to Waldo. Second, Waldo was not furnishing the equipment for free. Rather, Loos agreed to purchase the inventory and lease equipment from him. Finally, Waldo testified that he could not fire Loos.

However, the Workers' Compensation Court concluded that the right to control factor was dispositive. In ruling on the right to control, the court stated: "Although Loos fully operated the bar and made representations regarding his 'lease,' Mr. Waldo retained his right of control through his ownership of the liquor license and his status as a signatory on the bar's checking account."

Waldo and Loos agreed that Loos would purchase the inventory, but would merely lease equipment and the premises. The court reasoned that a liquor license can be transferred only on the sale of a business, not on a lease. See § 16-4-404(6), MCA. The court determined that because no sale occurred and no sale was intended, the parties could not have transferred the liquor license even if Loos had not died.

We note that a liquor license is personal to the licensee.

**10**

Section 16-4-404(3), MCA. Before a transfer of a liquor license is effective, the parties must file an application with the Department of Revenue. Section 16-4-404(6), MCA. Waldo and Loos did not file an application. Therefore, the purported sale of the liquor license to Loos was not effective and the liquor license remained in Waldo's name.

It is a felony to sell alcoholic beverages without a license. Section 16-6-302, MCA. As a result, the bar could not legally sell alcoholic beverages unless Waldo remained in control of the bar.

The Workers' Compensation Court reasoned that because Waldo owned the liquor license, he had the right to mandate that Loos comply with the State liquor laws. The court further reasoned that Waldo had the right to retake possession of the bar if Loos did not comply. The court concluded that Waldo retained some right to control Loos' operation of the bar through the liquor license.

In addition, the court reasoned that Waldo had some right to control because he could withdraw funds from the account, as his name was still on the account. After Loos died, Waldo resumed operation of the bar and paid Loos' business debts. The court concluded that although Waldo did not have access to the bar's checkbook, he "in effect had access to the purse strings of the bar."

Although nearly all of the evidence showed that Loos operated the bar, the court held that Loos was not an independent contractor because Waldo retained some right to control the business through the liquor license and the checking account. We hold that there is

11

substantial credible evidence to support the court's determination that Waldo had the right to control Loos' work.

In conclusion, the court reasoned that Loos must have been an employee because he was not an independent contractor. We note that the dealings between Waldo and Loos were hardly clear-cut business transactions. Consequently, this Court will not attempt to classify them. We merely hold that the Workers' Compensation Court's determination that Loos was an employee of Waldo's Acton Bar was not reversible error.

## II.

Did the Workers' Compensation Court err in denying Jan Loos' costs and attorney fees?

A worker's compensation claimant is entitled to reasonable costs and attorney fees if the Workers' Compensation Court determines that the insurer acted unreasonably in denying liability. Section 39-71-611(1)(c), MCA. The standard of review on the issue is whether the Workers' Compensation Court abused its discretion. Baeta v. Don Tripp Trucking (1992), 839 P.2d 566, 568-69, 49 St.Rep. 824, 825.

In this case, the Workers' Compensation Court did not determine that UEF acted unreasonably. In fact, the Worker's Compensation Court held that Loos was operating the bar in all areas except the right to control.

There is no evidence of unreasonable conduct by the insurer. Workers' compensation covers employees, but does not automatically

12

cover sole proprietors, working partners, or independent contractors. See § 39-71-401(2)(d), MCA. A workers' compensation mediator and a hearing examiner separately determined that Loos was not Waldo's employee. In addition, the UEF's claims examiner concluded that Waldo did not owe a penalty for noncompliance with workers' compensation laws, because she could not find any evidence that Loos was an employee.

Because it is not clear that Loos was an employee of Waldo's Acton Bar at the time of his death, the UEF did not act unreasonably in denying liability. Therefore, the Workers' Compensation Court did not abuse its discretion in denying Jan Loos' request for costs and attorney fees. Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

**13**

Justice Fred J. Weber dissents as follows:

The majority affirmed the determination by the Workers' Compensation Court that Loos was an employee rather than a sole proprietor. The majority affirmed the usage of the independent contractor test in reaching that conclusion. I disagree with the usage of the independent contractor test in this case.

The majority further concluded there was substantial credible evidence to support the Workers' Compensation Court in its determination that Waldo did not sell the bar to Loos and did not intend to sell it. The record does not support that conclusion.

The Workers' Compensation Court found that Waldo retained his right of control by ownership of the liquor license and his status as a signor on the bar checking account. Applying the control factor from Sharp v. Hoerner Waldorf Corp. (1978), 178 Mont. 419, 584 P.2d 1298, the Workers' Compensation Court concluded that Loos was an employee because this was direct evidence of the exercise of control by Waldo. The key part of the statute relied upon by the court is the following paragraph of § 16-4-406, MCA (1987):

> (6) Upon a bona fide sale of the business operated under any license, the license may be transferred to a qualified purchaser. No transfer of any license . . . shall be effective unless and until approved by the department, and any . . . proposed transferee who operates . . . under any supposedly transferred license prior to the approval of such transfer by the department, . . . shall be considered as operating without a license and the license affected may be revoked . . .

The Workers' Compensation Court concluded that there was no sale of the business under the statute, and the absence of a

14

license transfer provided Waldo with the right of control. The Workers' Compensation Court stated:

> Loos was allegedly leasing the bar from defendant Waldo. However, according to the statute above, it is only upon a _sale_ of the business that a liquor license can be transferred. Therefore, since there was no sale and since none was intended, no transfer of the license could have taken place, even if Loos had not died. This retention of the liquor license provided defendant Waldo the right to control the operation of the bar.

I disagree with the conclusion that no sale occurred and that none was intended. The record does not contain evidence to support that conclusion. Following are portions of significant transcript testimony by Waldo, the previous owner and seller of the bar, which establishes that a sale was intended and in fact was made:

Q    Did you operate this bar--Previously you testified that you had owned it since '84.

A    Yeah.

Q    Did you operate the bar from that time until September of '88?

A    Yes.

Q    Did you sell the business and lease the building --

A    Yes, I did.

Q    --and the equipment to anyone in 1988?

A    Yes, I did.

Q    Who was that?

A    Gary Loos.

        . . .

Q    When did you start discussing with him the possibility of leasing the bar?

A    During the summer of 1988.

15

Q     What date did the sale and lease take place?

A     September 14th, 1988.

Q     What were the basic terms, the financial terms of this sale of the lease?

A     $1000 a month for the lease on the building and the equipment, $280 a month for the insurance and he would buy the inventory and cash on hand.

Q     Did you surrender complete control and convey everything to him on that day?

A     Yes, I did.    I didn't even have a key for the building.

Q     Was this--I think you've testified previously that this was an oral agreement on September 14th?

A     Yes.

Q     That no formal sale or lease documents had been signed on that date?

A     The only thing that had been signed was the inventory we took.

Q     Did you and Gary intend to memorialize the terms of the lease in writing of the sale?

A     Yes, we did.

Q     When did you intend to do that?

A     As soon as the paperwork got there from a friend of mine who had just leased her bar.

.  .  .

Q     Now, where were the papers going to come from?

A     From Marty Dreiling who owns the Ryegate Bar who has leased it to the DeBuffs who testified here today.

.  .  .

Q     Did you and Gary discuss what the Ryegate deal was about and why you needed those papers?

A     Yes, we did.

16

Q    Did you discuss with him the type of agreement that you were going to receive in the mail?

A    Yes.

Q    And he  agreed to go along with that form and to change the names and the dates and the amounts  to fit your situation?

A    Yes.

. . .

Q    Mr. Waldo, if you had received the lease agreement from Martha Dreiling on the 14th--You said you had called her on the 11th or 12th.  If you had  received it on the 14th  as you thought you would, would all the paperwork have been completed very promptly?

A    Yes, it would have.

. . .

Q    On the next page it [Ryegate Bar agreement] says "Sale And Assignment of All-Beverage License".  The difference would be your number and how much was going to be paid.  How much did you and Gary agree were going to be paid for the liquor license?

A    $1.

Q    What was the reason for a dollar?

A    The reason for the dollar is the guy didn't have that much money.  And we were going to set it up in escrow, and the year-to-year lease would be that if he defaulted on the lease it would revert back to me.

Q    Essentially, you were  just wanting to get out of the bar business and the amount of the -- had you received the rent money, that the amount you were selling the liquor license for wasn't that important?

A    That's right, it wasn't that important.

Q    And you were talking about an escrow where you would get the liquor license back if he defaulted?

A    Yes.

Q    Now, did that mean he would pre-sign a  transfer form on the liquor license that would go into escrow?

17

A    Yes.

. . .

Q    You testified earlier that once this was signed and you received it you were going to go down to a lawyer's office and incorporate this with the transfer forms.

A    Yes.

Q    And is this something you had done previously --

A    Yes.

Q    -- when you purchased the bar?

A    When I purchased the bar, that's the way it was done.

Q    When you bought the bar, was your transfer already approved by the time you began to operate?

A    No.

. . .

Q    On the 14th of September 1988, did Gary Loos own the business?

A    Yes, he did.

Q    Did he run it -- Could he run it in any way he wished?

A    Any way that he wanted to.

Q    Could you fire him?

A    Absolutely not.

Q    Could you exercise any control over him?

A    None whatsoever.

Q    Could he order you off the premises?

A    Yes, he could.

Q    Did you have a key to the building?

A    No. I did not.

18

Q    Did you tell him how to do anything so far as operating the bar?

A    I told him how to do nothing. He asked me a couple things and I explained how I did it.

Q    Did you pay him any wages?

A    No. I didn't.

The Workers' Compensation Court incorrectly concluded that while counsel had briefed the issue of whether or not a contract existed, "dispositive in this case is defendant Waldo's right of control over Loos." As quoted above, the court concluded that according to the license transfer statute, it is only upon a sale that a liquor license can be transferred and since there was no sale here and none was intended, no transfer could have taken place. Two questions are raised by that conclusion. The first is whether the facts demonstrate the absence of a sale. The second is whether the failure to comply with the statute is sufficient to invalidate the sale.

With regard to the first point, it is clear that the uncontradicted facts rebut the holding that there was no sale and none was intended. I would reverse the factual determination of the Workers' Compensation Court that there was no sale and none was intended. I would rely upon the holding of State Comp. Mut. Ins. Fund v. Lee Rost Logging (1992), 252 Mont. 97, 827 P.2d 85, and hold that the finding was not supported by substantial evidence and was, therefore, clearly erroneous.

The next question relates to the Workers' Compensation Court's application of § 16-4-404(6), MCA (1987), when it concluded there

19

was a right of control under that statute which met factor one of the Sharp test for an employee rather than an independent contractor. That section does not require such an interpretation. The section establishes that until a transfer of license has been approved by the department, such a transfer is ineffective for licensing purposes and a proceeding may be brought to revoke or suspend the license. I find nothing in the statute which allowed the court to conclude that the statute itself gave Waldo a right to control Loos. The Court apparently concluded that because the license had not yet been transferred, that necessarily gave Waldo the right to control Loos. The statute does not warrant such a conclusion by its wording. In addition, the facts as above set forth clearly indicate that Waldo did not intend to retain such a right of control and, in fact, did not exercise any such right of control. I conclude that the failure to complete the statutory procedure for license transfer did not give any measure of control to Waldo. I therefore conclude that the Workers' Compensation Court and the majority incorrectly applied factor one of the Sharp test in concluding that Waldo retained control over Loos.

I again emphasize that in reaching this conclusion, the majority failed to rely upon the record but relied only upon the statute itself. Applying the four factors of the Sharp test, we must conclude as follows: (1) the record demonstrates no evidence of retention of a right of control by Waldo, (2) the method of payment did not demonstrate an employee relationship--in fact the record is totally absent of any proof to demonstrate that Waldo was

20

to pay anything to Loos which could be classed as compensation, (3) no furnishing of equipment was present which would demonstrate an employee relationship, and (4) there was no right to fire on the part of Waldo. Because the record, without contradiction, establishes that the four factors stated in Sharp have not been proven, there is no basis to conclude there was an employee relationship rather than an independent contractor relationship.

The Fund was correct when it contended that Loos was a sole proprietor and exempt from the Workers' Compensation Act under the facts of this case. The Act specifically does not apply to the employment of sole proprietors. Section 39-71-401, MCA (1987), in pertinent part states:

> (2) Unless the employer elects coverage under this chapter and an insurer allows such an election, the Workers' Compensation Act does not apply to any of the following employments: . . .
> (d) employment of sole proprietors or working members of a partnership, except as provided in subsection 3; . . .
> (3)(a) A sole proprietor . . . who holds himself out or considers himself an independent contractor . . . must elect to be bound personally and individually by the provisions of compensation plan No. 1, 2 or 3 . . .

Because the factual record demonstrates that Loos was not intended to be an employee and that the test demonstrating an employee relationship under Sharp had not been met, the issue remaining is whether or not Loos was a sole proprietor. The record demonstrates without contradiction that he was such a sole proprietor. Under the foregoing statute, a sole proprietor may be covered by the Act if he elects to be bound personally. Such election was not made here.

21

I conclude the Workers' Compensation Court erroneously found there had been no sale of the business. I further conclude that even where the independent contractor test is applied, under the uncontradicted facts of this case, there was no control present. Last, I conclude that Loos was a sole proprietor and not an independent contractor and was not covered by workers' compensation. I would hold, therefore, that Loos, in fact, was a sole proprietor and that in the absence of any election under the statute, he could not be classed as covered by the Act.

I would reverse the Workers' Compensation Court.

_____
Justice

Justice Karla M. Gray concurs in the foregoing dissent.

_____
Justice

March 17, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Phillip R. Oliver
OLIVER & GRAVES, P.C.
P.O. Box 1456
Billings, MT 59103

Randall G. Nelson
FELT, MARTIN, FRAZIER & LOVAS, P.C.
P.O. Box 2558
Billings, MT 59103-2558

David A. Scott
Department of Labor and Industry
P.O. Box 1728
Helena, MT 59624

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy