NO.    94-486

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

R. KIM WUNDERLICH,

       Petitioner and Appellant,

   vs.

LUMBERMENS MUTUAL CASUALTY COMPANY,

       Respondent/Insurer   for

BUTTREY FOOD AND DRUG,

       Employer,

   and

SKAGGS ALPHA BETA,

       Respondent/Insurer   for

SKAGGS ALPHA BETA,

       Employer.

APPEAL FROM:   Workers' Compensation Court, State of Montana
               The Honorable Mike McCarter, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

         Richard J. Martin; Alexander, Baucus & Linnell,
         Great Falls, Montana

      For Respondent:

         Thomas A. Marra; Marra Wenz, Johnson & Hopkins,
         Great Falls, Montana

FILED

Submitted on Briefs:   January 19, 1995

Decided:   March 31, 1995

Filed:   MAR 31 1995

CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

R. Kim Wunderlich (Wunderlich) appeals from the findings, conclusions, and judgment of the Workers' Compensation Court. The court denied Wunderlich's **claim** for permanent partial disability benefits under § 39-71-703, MCA (1985), and his claims for a penalty and attorney fees based on Lumbermens Mutual Casualty Company's (Lumbermens) unreasonably delayed acceptance of his occupational disease claim. We affirm.

The Workers' Compensation Court consolidated Wunderlich's Workers' Compensation Act and Occupational Disease Act **claims** for **trial.** For purposes of clarity, we address Wunderlich's claim under § 39-71-703, MCA (1985), first and thereafter address his occupational disease claims.

1. The 1987 Upper Back Injury Workers' Compensation Claim

Buttrey Food and Drug, formerly known as Skaggs Alpha Beta (hereafter Buttreys), operated a central warehouse distribution center in Great Falls, Montana. On June 11, 1987, while employed by Buttreys, Wunderlich was loading a truck at the distribution center. A case of tissue weighing approximately eighty pounds began to fall and, when Wunderlich attempted to catch it, he felt pain between his shoulders. Wunderlich finished his shift and then sought chiropractic treatment for his injury, which he described as "a knot in the middle of my back." The chiropractor diagnosed Wunderlich's injury as a strain/sprain of the spine with attendant pain in the muscles and nerves.

Wunderlich's chiropractor authorized Wunderlich's return to

2

work without restriction on June 30, 1987. Chiropractic treatments continued for another month. Buttreys, which was self-insured under Plan 1 of the Workers' Compensation Act, accepted liability for Wunderlich's workers' compensation claim for temporary total disability resulting from his upper back injury.

Wunderlich injured his lower back on three subsequent occasions in the course of his employment with Buttreys over the next five years. While receiving chiropractic treatment for those lower back injuries, which ultimately led to his occupational disease claim, Wunderlich would make complaints of mid and upper back soreness to the treating chiropractor.

On October 4, 1993, Wunderlich petitioned the Workers' Compensation Court for permanent partial disability benefits as a result of the June 11, 1987, injury to his upper back. Buttreys agreed that Wunderlich suffered an injury on June 11, 1987, while employed at its distribution center, but denied that his disability arose from that injury. The court denied Wunderlich's claim, determining that he failed to establish that he suffered a disability or impairment arising from the 1987 injury and, in any event, failed to establish a loss of present earning capacity due to that injury. Wunderlich appeals.

It is well-settled that "[w]orkers' compensation benefits are determined by the statutes in effect as of the date of injury." Buckman v. Mont. Deaconess Hospital (1986), 224 Mont. 318, 321, 730 P.2d 380, 382. Accordingly, Wunderlich's claim is governed by the 1985 version of the Workers' Compensation Act.

"Permanent partial disability" is statutorily defined as an injury "that results in the actual loss of earnings or earning capability less than total that exists after the injured worker is as far restored as the permanent character of the injuries will permit." Section 39-71-116(12), MCA (1985). Pursuant to § 39-71-709, MCA (1985), a claimant can pursue a disability award under § 39-71-703, MCA (1985), or an indemnity award under §§ 39-71-705 through -708, MCA (1985). See also Stuker v. Stuker Ranch (1991), 251 Mont. 96, 98, 822 P.2d 105, 107. The amount of workers' compensation benefits to which a claimant is entitled is determined under § 39-71-703(1), MCA (1985), regardless of which award a claimant elects to pursue. Sections 39-71-703(1), 39-71-705 and 39-71-706, MCA (1985).

Section 39-71-703(1), MCA (1985), provides in pertinent part:

> Weekly compensationbenefits for injury producing partial disability shall be 66 2/3% of the actual diminution in the worker's earning capacity measured in dollars . . .

"In order to prevail under [§] 39-71-703, MCA (1985), a claimant must show an actual diminution in present earning capacity and such a loss must be measured on the open labor market." Kuenning v. Big Sky of Montana (1988), 231 Mont. 1, 4, 750 P.2d 1091, 1093 (citation omitted). The general rule is that a claimant bears the burden of establishing the right to receive compensation. Kuenning, 750 P.2d at 1093.

Wunderlich challenges findings of the Workers' Compensation Court relating to both the existence of a partial disability or impairment arising from the 1987 injury and his diminution in

4

earning capacity as a result of that injury. As set forth above, he must prove both elements in order to establish entitlement to workers' compensation benefits. See §§ 39-71-703, 39-71-705 and 39-71-706, MCA (1985); Stuker, 822 P.2d at 107-108. Because we reject Wunderlich's assertion of error relating to diminution in earning capacity, we need not address his argument regarding the court's finding that he did not sufficiently establish a partial disability or impairment resulting from the 1987 injury.

Wunderlich argues that the Workers' Compensation Court erred in finding that he failed to meet his burden of establishing a loss in earning capacity because the court failed to give appropriate consideration to Terry Blackwell's (Blackwell) testimony regarding Wunderlich's reduced vocational abilities. In essence, Wunderlich does not challenge the sufficiency of the evidence to support the Workers' Compensation Court's finding. He argues, instead, that sufficient evidence exists to support a contrary finding that he experienced a loss in earning capacity due to the 1987 injury, but that the court did not properly consider it. His argument ignores this Court's standard of review regarding decisions of the Workers' Compensation Court.

We will uphold the Workers' Compensation Court's findings of fact if they are supported by substantial credible evidence. Smith v. United Parcel Service (1992), 254 Mont. 71, 75, 835 P.2d 717, 720. Substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Miller v. Frasure (1991), 248 Mont. 132, 137, 809 P.2d 1257, 1261. We

5

will not substitute our judgment for that of the trial court when the issue relates to the credibility of the witnesses or the weight given to certain evidence. Burns v. Plum Creek Timber Co. (Mont. 1994), 885 P.2d 508, 509, 51 St.Rep. 1175, 1176.

Wunderlich's evidence of diminution in present earning capacity as a result of his 1987 upper back injury was presented through Blackwell, a rehabilitation counselor. Blackwell calculated that Wunderlich's expected earnings in the Great Falls area amounted to $6.42 an hour, approximately one-half the amount Wunderlich earned as an employee of Buttreys. Blackwell stated that he based his calculations on correspondence and medical records from various physicians and chiropractors treating Wunderlich, a basic "screening test," a personal interview, and wage information obtained from the Montana Department of Labor and Industry (Department).

The court determined that, while Blackwell's testimony established a diminution in earning capacity, it was insufficient to establish that the loss of earning capacity resulted from Wunderlich's 1987 injury. Specifically, the court found that Blackwell's testimony was based on Wunderlich's overall physical condition, including his occupational disease; the court also found that Blackwell was unable to ascertain the extent, if any, to which the diminution in earning capacity resulted from Wunderlich's 1987 upper back injury.

Blackwell's testimony provides substantial support for the court's findings. Blackwell testified that he was retained by

6

Wunderlich to determine the impact Wunderlich's 1987 upper back injury had on Wunderlich's employment options in the Great Falls labor market. He also testified, however, that he was unable to determine the impact of the 1987 injury as distinct from the impact of the three subsequent lower back injuries. Blackwell stated that of the three subsequent lower back injuries, which relate to Wunderlich's occupational disease claim, Wunderlich's medical records did not distinguish between those individual injuries and the 1987 injury. Thus, he could not determine which of Wunderlich's limitations stemmed directly from the 1987 injury.

Wunderlich argues Blackwell's testimony is clear that some part of his overall loss of earning capacity was attributable to the upper back injury; on that basis, he asserts that the court should have weighed Blackwell's testimony with other probative evidence and computed a fair amount of permanent partial disability benefits. As we noted above, however, the weight given to certain evidence is a matter for the Workers' Compensation Court. Burns, 885 P.2d at 509. We will not substitute our judgment regarding the appropriate weight to be given Blackwell's testimony for that of the court.

On the basis of the record before us, we conclude that substantial credible evidence supports the Workers' Compensation Court's finding that Wunderlich did not establish his claim of lost earning capacity resulting from the 1987 injury. We hold, therefore, that the Workers' Compensation Court did not err in denying Wunderlich's claim for permanent partial disability

7

benefits.

2. The Occupational Disease Claim

As a result of his back injuries, Wunderlich developed a degenerative disk problem. on July 31, 1992, Wunderlich filed a claim for occupational disease benefits with Lumbermens, Buttreys' insurer for Occupational Disease Act claims, presenting three opinions from medical doctors stating that he suffered from an occupational disease. Lumbermens denied his claim three times during the following year. In August 1993, following a determination by the Department of Labor and Industry that Wunderlich was entitled to occupational disease benefits, Lumbermens accepted liability. Wunderlich then demanded a twenty percent penalty based on Lumbermens' allegedly unreasonable delay in accepting his claim; Lumbermens refused to pay the penalty.

Wunderlich petitioned the Workers' Compensation Court seeking both a twenty percent penalty and attorney's fees. He asserted that the Workers' Compensation Court's broad jurisdiction over workers' compensation and occupational disease issues authorized it to award a penalty pursuant to § 39-71-2907(1)(b), MCA, for an insurer's unreasonable delay in making occupational disease benefit payments due a claimant. The Workers' Compensation Court found that Lumbermens' denial of Wunderlich's underlying occupational disease claim was unreasonable, but concluded as a matter of law that it lacked jurisdiction to award the requested penalty. We review the Workers' Compensation Court's legal conclusions to determine whether they are correct. Bohmer v. Uninsured Employers'

8

Fund (1994), 266 Mont. 289, 291, 880 P.2d 816, 817.

Our resolution of this issue depends on whether the Workers' Compensation Court correctly interpreted several statutes. The function of courts in interpreting statutes is to "ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA. If the intention of the legislature can be determined from the plain meaning of the words used, we may not go further and apply other means of construction. Murer v. State Compensation Mut. Ins. (Mont. 1994), 885 P.2d 428, 430, 51 St.Rep. 1145, 1146-47.

Montana's Workers' Compensation Act specifically authorizes the Workers' Compensation Court to increase by twenty percent the full amount of benefits due a claimant if an insurer unreasonably delays or refuses to pay benefits. Section 39-71-2907, MCA. Montana's Occupational Disease Act, found at Title 39, chapter 72, MCA, contains no penalty provision. The legislature's inclusion of the straightforward penalty provision in the Workers' Compensation Act clearly reflects its intent to permit the Workers' Compensation Court to assess a penalty against an insurer in disputes under Title 39, chapter 71, MCA; the legislature's failure to include a corresponding provision in Title 39, chapter 72, MCA, just as clearly reflects the legislature's intent not to authorize assessment of such a penalty under the Occupational Disease Act. For that reason, we decline to insert a penalty provision into the Occupational Disease Act where one does not exist.

Wunderlich asserts that the Workers' Compensation court possesses broad jurisdiction over the determination of issues under both the Workers' Compensation Act and the Occupational Disease Act. On that basis, he argues that the plain language of § 39-71-2907, MCA, does not limit the award of a penalty to workers' compensation disputes, but encompasses and authorizes the award of a penalty in disputes arising under chapter 72. His argument is without merit.

It is true that § 39-71-2905, MCA, gives the Workers' Compensation Court broad jurisdiction regarding the adjudication of benefits and other disputes under the Workers' Compensation Act contained in Title 39, chapter 71, MCA. See also, State, Etc. v. Hunt (1981), 191 Mont. 514, 519, 625 P.2d 539, 542. The court also is specifically authorized to award assessments and penalties expressly provided in chapter 71 for disputes arising under that chapter. Section 39-71-2905, MCA. Section 39-71-2907, MCA, contains such a penalty.

In contrast, the Workers' Compensation Court's jurisdiction under the Occupational Disease Act is much more limited. There, the court reviews on appeal final determinations by the Department regarding occupational disease claims. Section 39-72-612, MCA. The review is statutorily circumscribed and, unlike the jurisdiction statute in the Workers' Compensation Act, does not provide express authorization to award assessments and penalties. Section 39-72-612(2), MCA.

Pursuant to legislative enactment, the Workers' Compensation

10

Court's jurisdiction under the Workers' Compensation Act differs substantially from its jurisdiction under the Occupational **Disease** Act. Broad jurisdiction pursuant to the Workers' Compensation Act simply cannot be superimposed upon, and override, limited jurisdiction under the Occupational Disease Act. We conclude, therefore, that the court does not have jurisdiction to assess a § 39-71-2907, MCA, penalty in a dispute arising under the Occupational Disease Act. Thus, we hold that the Workers' Compensation Court did not err in denying Wunderlich's petition for a penalty based on Lumbermens' unreasonable delay in accepting liability for the occupational disease claim.

Wunderlich's final argument relates to the Workers' Compensation Court's denial of his motion for attorney's fees pursuant to § 39-71-612, MCA. He argues that he is entitled to attorney's fees pursuant to § 39-71-612(1), MCA, if this Court concludes that he is entitled to a penalty pursuant to § 39-71-2907, MCA. Because we have concluded that Wunderlich is not entitled to a penalty under § 39-71-2907, MCA, we need not address his attorney's fees argument. We also need not address the issue, encompassed in that argument, relating to the interpretation of attorney's fees as "compensation" under the Workers' Compensation Act.

Affirmed.

_____
Justice

11

**We concur:**

_____
Chief Justice

_____

_____

_____
Justices

12