No. 95-573

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

EDMUND WALTON, LORETTA WALTON, PATRICK E. WALTON, PATTI
WALTON, STEPHEN WALTON, CONNIE WALTON, AND T. ED WALTON,

     Petitioners and Appellants,

    v.

WESLEY PANKRATZ, PORCUPINE GRAZING ASSOCIATION, INC.,
a Montana Corporation, MATTHEW W. KNIERIM, LAURA
CHRISTOFFERSEN, NICK PANKRATZ, and JOHN DOES 1-10,

     Respondents and Respondents,

  and

WESLEY PANKRATZ and PORCUPINE GRAZING ASSOCIATION,
INC., a Montana Corporation,

     Counterclaimants and Respondents,

  and

PETER NYQUIST,

     Cross-Plaintiff and Respondent,

    v.

EDMUND WALTON, LORETTA WALTON, PATRICK E. WALTON, PATTI
WALTON, STEPHEN WALTON, CONNIE WALTON, and T. ED WALTON,

     Defendants, Cross-Defendants, and Respondents,

  and

EDMUND WALTON, LORETTA WALTON, PATRICK E. WALTON, PATTI
WALTON, STEPHEN WALTON, CONNIE WALTON, and T. ED WALTON,

     Cross-Plaintiffs and Respondents,

    v.

PORCUPINE GRAZING ASSOCIATION, INC., a Montana Corporation,
NICK PANKRATZ, PETER A. NYQUIST, NORTH BENCH RANCH, INC.,
a Montana Corporation, EAST FORK RANCH, INC., a Montana
Corporation, and WESLEY PANKRATZ, Individually and d/b/a
PORCUPINE LAND and LIVESTOCK,

     Cross-Defendants and Respondents.

FILED

OCT 08 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Seventeenth Judicial
                District, In and for the County of Valley,
                The Honorable John C. McKeon, Judge presiding.


COUNSEL OF RECORD:

        For Appellants:

            Arnie A. Hove, Attorney at Law,
            Circle, Montana

        For Respondents:

            Robert Hurly, Attorney at Law,
            Glasgow, Montana

                                    _____


                            Submitted on Briefs:   August 8, 1996

                                       Decided:   October 8, 1996

Filed:

                          _____
                                    Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1995 Internal Operating Rules, the following decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to State Reporter Publishing Company and West Publishing Company.

The appellants, Edmund Walton, et. al. (Waltons), filed a petition for enforcement of a tribal court judgment and an application for a preliminary injunction in the District Court of the Seventeenth Judicial District in Valley County. The respondents, Wesley Pankratz, et. al. (PPN), challenged the jurisdiction of the tribal court and asserted, as a counterclaim, an ongoing agister's lien against Waltons' livestock. The parties reached a settlement of the issues raised by Waltons' request for injunctive relief. Waltons then (1) consented to a final adjudication on the merits, (2) withdrew their efforts to enforce the tribal court order, and (3) requested a trial in the District Court of the issues raised by PPN's counterclaim. After a nonjury trial, the District Court entered a judgment for PPN in the amount of $92,614.18. Waltons appeal the judgment of the District Court. We affirm the District Court.

The issues on appeal are:

1. Was there sufficient evidence to support the judgment of the District Court?

2.    Did the District Court err when it refused to admit a videotape offered into evidence by Waltons, or when it granted PPN's motion to quash a subpoena?

FACTUAL BACKGROUND

In November 1993, the parties made an agreement pursuant to which Waltons would transfer possession of a number of their livestock to PPN to keep on pastures belonging to or under the control of PPN.  The agreement included the following provisions:

1.    A lease of PPN's deeded lands for grazing by WALTONS of their livestock at an agreed lease price of $10.00 per animal unit month for adult animals, and 6/10ths thereof for calves;

2. A provision that, upon reaching feeding arrangements, PPN be paid going rates for feeder services;

3.    A provision that PPN is to be paid on the 15th of every month for services to date, and that they may be paid in cattle of value equal to money owed, provided said cattle are free and clear of prior liens.

On November 15, 1993, Waltons placed approximately 199 head of livestock on PPN's grazing ranges.  The livestock remained on PPN ranges until January 18, 1994.  Waltons were billed $3,980.00, which they paid in full.  However, after this initial successful transaction, the parties' business relationship deteriorated and resulted in this litigation.

On June 8, 1995, Waltons filed a petition for enforcement of a tribal court judgment and an application for a preliminary injunction in the District Court.  They demanded the immediate return of possession of their livestock.  PPN filed an answer in which it challenged the tribal court's jurisdiction, and asserted

4

an agister's lien as a counterclaim.  Prior to the conclusion of the injunction hearing, the parties reached a settlement on the issues raised by the request for an injunction.

Pursuant to that settlement, Waltons consented to a final adjudication on the merits in the District Court and withdrew their efforts to enforce the tribal court order.  Further, they stipulated on the record that, although the amount was disputed, PPN had a valid agister's lien.  The parties also stipulated that, in addition to the witnesses and evidence that would be presented at the trial, the District Court should admit and consider all of the witness testimony given at the preliminary injunction hearing.

A nonjury trial was held on November 27-28, 1995.  Both sides presented a considerable amount of evidence and number of witnesses.  Waltons asserted that, despite their previous stipulation on the record, PPN did not have a valid agister's lien after May 2, 1995.  They disputed whether PPN had, in fact, leased bulls to service their livestock, and objected to PPN's calculations of their monthly bills.  They also contended that PPN did not take proper care of their livestock, and that high numbers of their livestock had been killed and stolen.  The parties also disagreed on the actual number of Waltons' livestock for which PPN provided grazing and wintering services.

After the trial, the District Court entered its findings of fact, conclusions of law, and order of judgment, from which Waltons now appeal.  The District Court determined that PPN had (1) leased

bulls to service Waltons' cows; (2) kept, pastured, herded, and fed Waltons' livestock during various periods of time between January 24, 1994, and September 13, 1995; and (3) provided services for seven of Waltons' horses. Based on its findings, the District Court entered a judgment for PPN in the amount of $92,614.18. The District Court also issued the following orders: PPN has a valid agister's lien; PPN is entitled to the immediate return of 292 cows, 48 heifers, and 213 calves based on their agister's lien; and that the judgment is to be enforced by sale, as set forth in the statutory provisions regarding agister's liens.

The District Court subsequently issued a supplemental order. Waltons filed a premature appeal, and this Court remanded the case to the District Court for "the sole purpose of entering any further orders and judgments as might be necessary to finally resolve all issues in this cause." The District Court then issued its final order and awarded PPN the costs of gathering and caring for Waltons' livestock after the judgment.

                                ISSUE 1

Was there sufficient evidence to support the judgment of the District Court?

When we review a district court's findings of fact, the standard of review is whether those findings are clearly erroneous. *Interstate Prod Credit Ass'n v. DeSaye* (1991), 250 Mont. 320, 322, 820 P.2d 1285, 1287.

on appeal, Waltons submitted a fifty-page brief, and no less than forty of those pages are dedicated to a review of the facts. Waltons point out alleged inconsistencies and contradictions in PPN's evidence and testimony, and claim that the District Court improperly relied on that evidence and testimony. They dispute almost every finding of fact made by the District court. Specifically, they dispute the District Court's findings with regard to the following issues: the actual number of livestock for which PPN provided services; the calculations of their monthly bills; the level of care PPN exercised with regard to their livestock; whether PPN, in fact, leased bulls to serve their livestock; and the existence of PPN's agister's lien. They contend that the District Court's judgment and findings are not supported by "substantial largely uncontradicted evidence," and that the District Court did not give their evidence and testimony the same weight and credibility that it gave to PPN's.

Ultimately, Waltons' brief does nothing more than ask this Court to review the facts of the case and decide that the District Court erred in its resolution of the factual issues. That is not our role. "It is axiomatic that it is the function of the district court, and not of [the Supreme] Court to hear the testimony, to resolve conflicts in the evidence, to judge the credibility of the witnesses and to determine the facts." *Warnack v. Coneen Family Trust* (1994), 266 Mont. 203, *208*, 879 P.2d 715, 719. Furthermore, " [w]e will not substitute our judgment for that of the trial court when

7

the issue relates to the credibility of the witnesses or the weight given to certain evidence." *Wunderlich v. Lumbermens Mut. Cas. Co.* (1995), *270* Mont. 404, *408, 892* P.2d 563, 566. Nor will we substitute our judgment for that of the District Court "even where there is evidence in the record to support contrary findings." *In re Alcorn* (1994), 263 Mont. 353, 360, 868 P.2d 629, 633.

Our review of the facts, therefore, is necessarily limited, and we are, in this case, unwilling to substitute our judgment for that of the District Court. This case was driven by its facts; the District Court was forced to resolve a myriad of complicated factual disputes, including, most notably, the actual number of Waltons' livestock for which PPN provided services. Despite the alleged inconsistencies and contradictions in PPN's testimony and evidence, all of the District Court's findings of fact are supported by the record. Even though evidence is controverted, its weight is for the District Court to determine. After a review of the record, we conclude that there was substantial and credible evidence to support the District Court's findings, and that they are not clearly erroneous.

ISSUE 2

Did the District Court err when it refused to admit a videotape offered into evidence by Waltons, or when it granted PPN's motion to quash a subpoena?

When we review a district court's evidentiary or discretionary ruling, the standard of review is whether the district court abused

its discretion. *Hislop v. Cady* (1993), *261* Mont. 243, 247, 862 P.2d 388, *390; Montana Rail Link v. Byard* (1993), 260 Mont. 331, 337, 860 P.2d 121, 125. The test for abuse of discretion is "whether the trial court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice." *Tanner v. Dream Island,* Inc. (1996), 275 Mont. 414, 430, 913 P.2d 641, 651. Additionally, we note that questions relating to the admissibility of evidence are "left to the sound discretion of the trial court, subject to review only in the case of manifest abuse." *Mason v. Ditzel* (1992), *255* Mont. 364, 370-71, 842 P.2d 707, 712.

Waltons claim that the District Court erred when it refused to admit a videotape into evidence. The videotape, they allege, would have provided the District Court with additional information regarding the condition of their livestock.

The District Court refused to admit the videotape for the following reasons: (1) the videotape was not offered in accordance with the rules of evidence; and (2) Waltons had already exceeded the stringent **time** deadline the District Court had established for the presentation of evidence. We conclude that the District Court did not abuse its discretion when it excluded the videotape offered by Waltons.

Waltons also claim that the District Court erred when it granted PPN's motion to quash a subpoena duces tecum served on the Glasgow Stockyard Company. They allege that the subpoenaed witness

and accompanying documents would have provided the District Court with additional information regarding the actual number of livestock for which PPN provided services, and would have supported the allegations regarding theft of their livestock.

The District Court granted PPN's motion to quash the subpoena for the following reasons: (1) compliance with the subpoena would have required a considerable amount of **time** and effort, and Waltons provided Glasgow Stockyard with only thirteen days notice; and (2) the requirements of the subpoena were too broad for Glasgow Stockyard to be able to effectively comply with its terms. We conclude that, for the reasons set forth in the District Court's order, it did not abuse its discretion when it quashed Waltons' subpoena duces tecum.

Finally, we note that, in their appeal, Waltons raise four issues in addition to the two we have already addressed. These four issues were not raised in the District Court, and therefore, will not be considered for the first time on appeal.

The judgment of the District Court is affirmed.

_____
ust c'e

We concur:

_____
"Chief Justice

10

W. William Rehnquist

Justices

October 8, 1996

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Arnie A. Hove
Attorney at Law
P.O. Box 184
Circle, MT 59215

Robert Hurly
Attorney at Law
P.O. Box 1170
Glasgow, MT 59230

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: *N. Gallagher*
Deputy