No. 99-584

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 389N

TIMOTHY T. WALL,

Petitioner and Appellant,

v.

NATIONAL UNION FIRE OF PITTSBURGH, ET AL.,

Respondent and Insurer for

CBI INDUSTRIES,

Employer.

APPEAL FROM: Workers Compensation Court, State of Montana,

The Honorable Michael McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Timothy T. Wall (pro se), Frenchtown, Montana

For Respondent:

Peter J. Stokstad, Garlington, Lohn & Robinson, PLLP,

Missoula, Montana

Submitted on Briefs: November 30, 2000
Decided: December 28, 2000

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Claimant, Timothy T. Wall petitioned the Workers' Compensation Court for the State of Montana, for an award of permanent total disability benefits. The Workers' Compensation Court found that his neck injury was not caused by a work-related accident and that he is not totally disabled. Wall appeals. We affirm the judgment of the Workers' Compensation Court.

¶3 Wall presents the following issues on appeal:

¶4 1. Did the Workers' Compensation Court err when it found that Wall's neck injury was not caused by a work-related accident?

¶5 2. Did the Workers' Compensation Court err when it found that Wall is not totally disabled?

## FACTUAL BACKGROUND

¶6 Timothy T. Wall is 52 years old. He worked as an apprentice mechanic for nearly ten years and received training as a welder. He worked as a boilermaker for 25 years. He also owned and operated an automobile repair business in Missoula, and managed his own rental properties.

¶7 He began work at CBI Industries in the fall of 1992 and injured himself during the course of that employment. On October 6, 1992, while operating a 9-inch grinder, he lost his grip with his right hand. His left arm extended from his body and he heard a popping

sound in his shoulder. CBI was insured by National Union Fire of Pittsburgh. National accepted liability for the shoulder or left rotator cuff injury and paid Wall compensation and medical benefits.

¶8 Wall has not worked since the date of the accident. He went to see Margaret Dancer, a Physician's Assistant, the day after the accident. Two days after the accident, he visited Danny Browning, another Physician's Assistant. He told them both that he heard a popping noise in his shoulder when his left arm extended. In their depositions, both Browning and Dancer denied that Wall mentioned any neck pain. He saw Dr. Robert Moseley a couple days after seeing Browning and Dancer and then went back to him for several follow-up visits. During that year, he continued to see a chiropractor, Dr. Patrick Montgomery, whom he had seen prior to the accident.

¶9 Wall first mentioned a connection between his industrial accident and neck pain to a doctor to whom he was referred by his attorney on June 12, 1993. He continued to see various doctors about his injuries and had surgery on his shoulder in 1994. Following surgery, his shoulder condition improved.

¶10 On April 14, 1993, he applied for Social Security Disability Benefits, but did not mention a neck injury. However, in October of that year, he added cervical strain to his application for benefits as a change in condition. National denied liability for the cervical injury.

¶11 On August 5, 1996, Wall filed his petition with the Workers' Compensation Court and asked that the court determine that he had injured his neck during the October 6, 1992 industrial accident and that he is entitled to permanent total disability benefits as a result of the injuries he sustained. The Workers' Compensation Court found that his neck injury was unrelated to his industrial accident and that he is not totally disabled.

## DISCUSSION

## ISSUE ONE

¶12 Did the Workers' Compensation Court err when it found that Wall's neck injury was not caused by his work-related accident?

¶13 Wall contends that the Workers' Compensation Court erred when it found that his

neck injury was not caused by his work-related accident in 1992. Findings of fact rendered by the Workers' Compensation Court are reviewed to determine whether they are supported by substantial credible evidence. *Wunderlich v. Lumberman's Mut. Cas. Co.* (1995), 270 Mont. 404, 408, 892 P.2d 563, 566. We review a court's conclusions of law to determine whether they are correct. *Stordalen v. Ricci's Food Farm* (1993), 261 Mont. 256, 258, 862 P.2d 393, 394.

¶14 Wall testified at trial that he reported his neck injury to all the doctors that he saw after his accident. He also maintained that the popping noise most likely came from his neck and not his shoulder contrary to what he had told doctors and the claims adjuster for National. The Workers' Compensation Court evaluated this testimony against a backdrop of medical evidence and found otherwise.

¶15 The credibility of witnesses and the weight to be afforded their testimony is a matter left to the sound discretion of the trial court. *Groves v. Clark*, 1999 MT 117, ¶ 18, 294 Mont. 417, ¶ 18, 982 P.2d 446, ¶ 18. The Workers' Compensation Court did not find Wall's claims nor his testimony credible. Based on the trial testimony of Stephen Johnson, M.D. and the depositions of five additional healthcare providers, the Workers' Compensation Court found that the industrial accident did not cause the neck injury.

¶16 The Court first evaluated the depositions of Margaret Dancer and Danny Browning, the physician's assistants who examined Wall in the days following his accident. They denied being told by Wall about a neck injury. Three days after the accident, Dr. Robert Moseley examined Wall. He stated in his deposition that Wall did not mention any neck pain, nor did he see any symptoms of a neck injury. Furthermore, Wall did not mention any neck pain in any of the four follow-up visits to Dr. Moseley's office. According to each of Dancer's, Browning's, and Moseley's medical records, Wall told them each separately that he heard a popping noise in his shoulder, and not in his neck as he stated in his deposition.

¶17 On January 12, 1993, at National's request, Wall saw Dr. James Burton, who stated in his deposition that Wall did not complain about neck pain. Burton performed a physical examination of Wall, including his neck. He determined that Wall had a normal range of motion in his neck without any spasm or complaint of pain during the examination. Wall did not report a neck injury at that time, nor at the two follow-up visits in May and June 1993.

¶18 Wall relies on the records of his chiropractor, Patrick Montgomery, as evidence of his neck pain. However, in Dr. Montgomery's notes from Wall's initial visits after the industrial accident, Montgomery failed to refer to any neck pain. Wall saw Dr. Montgomery six times in 1993. Wall did not mention any neck pain to Montgomery until July 2 of that year. In the medical notes which memorialized this visit, Dr. Montgomery linked the neck pain, from a cervical strain to Wall's weight-lifting activity one day prior to the appointment. On September 23, 1994, Dr. Montgomery wrote a letter to the counsel for National, stating that the neck problem was never a serious problem and that most of his treatment was for Wall's lower back. However, in January 1996, Dr. Montgomery wrote that he had treated Wall for neck problems since the accident. The Workers' Compensation Court did not find the letter credible when compared to Montgomery's treatment records of Wall. Furthermore, Montgomery did not testify at trial nor give a medical diagnosis of Wall's neck condition.

¶19 The first indication that Wall suffered a neck injury which was work-related occurred during an appointment on July 12, 1993, with Dr. Gary Cooney to whom Wall was referred by Wall's attorney. The Workers' Compensation Court placed little weight on this evaluation because Wall told Cooney that he had suffered a neck and shoulder injury on October 6, 1992. There was no mention of any strain to his neck from lifting weights, as reported to Dr. Montgomery ten days earlier.

¶20 The Workers' Compensation Court found Dr. Stephen Johnson's testimony compelling. Johnson is a neurologist who did an independent medical evaluation of Wall in 1995. He testified that there were no objective medical findings which show that Claimant suffered from an acute cervical injury and "if the neck problem was not mentioned right around the time of the accident, then it seems a lot less likely that it's really related to the accident . . . ."

¶21 Furthermore, the Court found that Wall's application for Social Security disability benefits in April 1993 conspicuously omitted any mention of a neck injury even though he did cite his torn rotator cuff, a left leg disability, constant pain in his left foot, flat feet, hearing loss, a right shoulder dislocation in 1978, and low-back pain. Then, in October 1993, Wall listed his cervical sprain as a change in his condition.

¶22 We conclude that substantial evidence supports the Workers' Compensation Court's Finding that Wall's neck injury was not caused during the course of his employment.

## ISSUE TWO

¶23 Did the Workers' Compensation Court err when it found that Wall was not totally disabled?

¶24 The Workers' Compensation Court concluded that Wall "failed to persuade [the court] that he is permanently totally disabled." The law in effect at the time of the injury governs the claimant's entitlement to benefits. *Buckman v. Montana Deaconess Hosp.* (1986), 224 Mont. 318, 321, 730 P.2d 380, 382. Since Wall was injured on October 6, 1992, the 1991 version of the law applies. If a worker is permanently totally disabled, as defined in § 39-71-116, MCA, then he or she is qualified for permanent total disability benefits. Section 39-71-702, MCA (1991). The Workers' Compensation Act defines permanent total disability as:

> [A] condition resulting from injury as defined in this chapter, after a worker reaches maximum healing, in which a worker has no reasonable prospect of physically performing regular employment. Regular employment means work on a recurring basis performed for remuneration in a trade, business, profession, or other occupation in this state.

Section 39-71-116 (16), MCA (1991). Wall conceded at trial that he had reached maximum medical improvement. The Workers' Compensation Court, therefore, limited its consideration to whether Wall "had a reasonable prospect of physically performing regular employment."

¶25 Deborah Grube Peterson, a vocational consultant, conducted an employability assessment of Wall. Peterson testified that:

> [Wall] demonstrated skills and abilities of using his hands, eyes, fingers and feet to adjust and operate machines and manipulate hand tools and controls in diagnosing and repairing mechanical problems, waiting on customers, handling monetary transactions, using common sense and basic language and math skills to carry out instructions, total costs, make change and fill out forms.

She identified a variety of positions, including auto repair estimator, auto parts clerk, and property manager that Wall was qualified for based on his prior work history, transferrable skills, and physical restrictions.

¶26 In 1993, Dr. Moseley approved all three of these jobs for Wall. According to his deposition in 1999, Moseley still approves these jobs. Furthermore, Dr. Burton, Dr. Rotar, and Dr. Johnson expressed their approval of these jobs.

¶27 Peterson did a labor market survey in Missoula and determined that positions existed for all three jobs. Based on this evidence, the Workers' Compensation Court found that Wall did have a reasonable prospect of performing regular work.

¶28 We conclude that substantial evidence supports the Workers' Compensation Court finding that Wall is not totally disabled.

¶29 We affirm the judgment of the Workers' Compensation Court.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON