No. 00-830

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 6N

LEONARD THORESON,

Plaintiff and Appellant,

v.

UNINSURED EMPLOYERS' FUND,

Defendant and Respondent,

and

RODNEY HINKLE,

Claimant and Respondent.

APPEAL FROM: Workers' Compensation Court

In and for the State of Montana

The Honorable Mike McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Leonard Thoreson, Great Falls, Montana (*pro se*)

For Respondent:

Richard Martin, Linnell, Newhall, Martin & Schulke, Great Falls, Montana (Hinkle); Daniel McGregor, Montana State Fund, Helena, Montana (UEF)

Submitted on Briefs: June 7, 2001
Decided: January 15, 2002

Filed:

_____

Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Leonard Thoreson appeals the Workers' Compensation Court's (WCC) Findings of Fact, Conclusions of Law and Judgment by which he was required to reimburse the Uninsured Employers' Fund (UEF) for all compensation and medical benefits the UEF had paid to or for Rodney Hinkle. We affirm the decision of the WCC.

¶3 By way of procedural background, Thoreson testified that at the time of Hinkle's injury he did not carry workers' compensation insurance. Therefore, after Hinkle's injury, Hinkle filed a workers' compensation claim with the UEF. The claim was accepted by the UEF, which began paying both disability and medical benefits on behalf of Hinkle. The UEF notified Thoreson that he was statutorily responsible for reimbursing the UEF for all benefits paid on behalf of Hinkle under § 39-71-504, MCA (1995). Thoreson brought an action before the WCC seeking dismissal of this claim for reimbursement. The WCC ruled that UEF's acceptance of Hinkle's claim was proper and that Thoreson was obligated to reimburse the UEF for all benefits distributed on behalf of Hinkle as well as reasonable compensation the UEF might pay on behalf of Hinkle in the future. It is from this ruling that Thoreson appeals.

## ISSUES

¶4 The following issues are raised on appeal:

1. Was Rodney Hinkle an independent contractor at the time of his injury?

2. Had Hinkle been using alcohol or drugs at the time of his injury?

3. Did Hinkle's intoxication from drug use render him ineligible for worker's compensation benefits?

4. Did Hinkle have willful and wanton intent to injure himself?

5. Did Judge McCarter exhibit a conflict of interest?

## FACTUAL AND PROCEDURAL BACKGROUND

¶5 At the time of trial on March 27, 2000, before the WCC, Thoreson had been an independent building contractor for over twenty years. He typically hired independent contractors to work with him. He was not carrying workers' compensation insurance at the time nor did he have an independent contractor exemption for himself at the time of the project that is the setting for this case.

¶6 In December 1996, Thoreson contracted with a home owner to build and paint a deck on her home located outside Denton, Montana. Thoreson arranged for Dale Thompson (Thompson) and Pat Malatere (Malatere) to assist him and paid them hourly wages.

¶7 Shortly after the work began, the home owner asked Thoreson to re-roof her house as well. Thoreson engaged Hinkle, with whom he had previously worked, to install the shingles on the home owner's house. At issue in this case is whether Hinkle was hired as an independent contractor or an employee.

¶8 Hinkle advised Thoreson that he did not have transportation to the project site. Thoreson therefore drove to Great Falls the night before the roof work was to begin, picked up Malatere and then Hinkle, and returned to Thoreson's home in Geraldine. Hinkle and Malatere both spent the night with Thoreson. During this time, Thoreson noticed that Hinkle had no roofing tools and asked about the tools. Hinkle told Thoreson

that he had pawned them. Thoreson agreed to let Hinkle use his tools for the job.

¶9 The following morning, while Thoreson was on the telephone, Malatere and Hinkle went outside on Thoreson's porch for a smoke. Malatere smoked a cigarette, and later testified that Hinkle smoked marijuana. Thoreson observed the two men smoking through a window approximately thirty to thirty-five feet away.

¶10 Shortly thereafter, Malatere and Hinkle prepared to leave for the jobsite in one truck, planning to stop along the way to pick up shingles. As the two men were getting in their truck to go to the jobsite, Thoreson stepped outside to leave. He testified at the trial that he smelled cigarette smoke and the odor of marijuana but was not sure whether one of the men had been smoking marijuana on the porch or if it was residual odor from the clothing of one of them. Thoreson did not attempt to prevent Hinkle or Malatere's departure, and had no further contact with either man until after Hinkle's injury.

¶11 Thoreson picked Thompson up along the way to the jobsite. By the time he arrived at the Denton jobsite, Malatere and Hinkle had already unloaded some of the shingles from their truck. They then began unloading shingles from Thoreson's truck with Thompson's assistance, and, using a ladder from the truck Thoreson had driven, took the shingles up to the roof. During this time, Thoreson was inside the house talking to the home owner and did not approach or speak to Hinkle.

¶12 Thoreson previously had instructed Malatere and Thompson to assist Hinkle in starting the roof work, but then to resume working on the deck. He gave no instructions to Hinkle.

¶13 Approximately ten minutes after Thoreson and Thompson had arrived at the jobsite, Hinkle fell or jumped from the roof, landing on his feet approximately ten feet away from the house, facing the house, and injuring both of his feet and ankles.

¶14 Thompson and Malatere were on the roof at the time, and testified that Hinkle was walking precariously close to the roof's edge, as if "walking a tightrope" or preparing to perform a dive, "balanc[ing] on the balls of his feet with his heels hanging off the edge of the roof." Neither man saw whether Hinkle fell or jumped. Upon discovering that he was injured on the ground, the men helped put him in Thoreson's truck. Thoreson then drove him to the Great Falls' Convenience Care where Hinkle was treated and released. Thoreson testified that Hinkle smoked marijuana on the way to the Convenience Care

center.

¶15 Malatere testified at trial that Hinkle smoked marijuana a total of three times the morning of his injury: once on Thoreson's porch, once during the drive to the jobsite, and a third time upon arriving at the jobsite. At the trial, Hinkle pled the Fifth Amendment when asked if he had smoked marijuana that morning.

## STANDARD OF REVIEW

¶16 We will uphold the Workers' Compensation Court's findings of fact if they are supported by substantial credible evidence. *Wunderlich v. Lumbermens Mut. Cas. Co.* (1995), 270 Mont. 404, 408, 892 P.2d 563, 566 (citing *Smith v. United Parcel Service* (1992), 254 Mont. 71, 75, 835 P.2d 717, 720). Substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Wunderlich,* 270 Mont. at 408, 892 P.2d at 566 (citing *Miller v. Frasure* (1991), 248 Mont. 132, 137, 809 P.2d 1257, 1261). "We will not substitute our judgment for that of the trial court when the issue relates to the credibility of the witnesses or the weight given to certain evidence." *Wunderlich,* 270 Mont. at 408, 892 P.2d at 566 (citing *Burns v. Plum Creek Timber Co.* (1994), 268 Mont. 82, 84, 885 P.2d 508, 509). Additionally, we review the Workers' Compensation Court's conclusions of law to determine if they are correct. *Russette v. Chippewa Cree Housing Auth.* (1994), 265 Mont. 90, 91-92, 874 P.2d 1217, 1218 (citing *Lovell v. State Fund* (1993), 260 Mont. 279, 284, 860 P.2d 95, 98).

## DISCUSSION

¶17 Thoreson argues that Hinkle was an independent contractor. He therefore maintains he cannot be held liable for any compensation or medical benefits paid to Hinkle by the UEF. As Hinkle's employment status is critical to the determination of this matter, it is the first issue we address.

¶18 Hinkle's injury occurred in December 1996, rendering the 1995 Workers' Compensation Act, §§ 39-71-101 - 2914, MCA (1995), applicable to this case. *Buckman v. Montana Deaconess Hosp.* (1986), 224 Mont. 318, 321, 730 P.2d 380, 382. Section 39-71-120, MCA (1995), establishes the criteria for independent contractor status.

Section 39-71-120. **Independent Contractor defined**.

(1) An "independent contractor" is one who renders service in the course of an

occupation and:

> (a) has been and will continue to be free from control or direction over the performance of the services, both under the contract and in fact;

> (b) is engaged in an independently established trade, occupation, profession, or business; and

> (c) has received an exemption granted under 39-71-401(3).

> (2) An individual performing services for remuneration is considered to be an employee under this chapter unless the requirements of subsection (1) are met.

¶19 The WCC noted, correctly, that the criteria listed in § 39-71-120, MCA, are enumerated in the conjunctive. Therefore, each prong of § 39-71-120(1)(a) through (c), MCA, must be met before a person is considered an independent contractor. *Loos for Loos v. Waldo* (1993), 257 Mont. 266, 273, 849 P.2d 166, 170; *Sharp v. Hoerner Waldorf Corp.* (1978), 178 Mont. 419, 424, 584 P.2d 1298, 1301. It is undisputed that Hinkle did not satisfy subsection (c) of the statute. The WCC also analyzed the other two prongs, as well, and concluded that there was insufficient evidence to draw a firm conclusion regarding prong (b) but found that the "evidence concerning control [in prong a] require[d] a finding that [Hinkle] was an employee."

¶20 We agree with the WCC. Under § 39-71-120(2), MCA, a person performing services for remuneration is considered an employee if the three requirements of § 39-71-120(1), MCA, are not met. It is undisputed that Hinkle did not obtain an exemption under § 39-71-401(3), MCA, as is required under §39-71-120(1)(c), MCA. Therefore, the conclusion that he must therefore be considered an employee is inescapable.

¶21 While Thoreson presented as an enumerated issue to this Court the question of whether Hinkle had been using alcohol or drugs at the time of his injury, we find that there is no dispute among the parties to the WCC's findings in this regard. The WCC heard credible testimony that Hinkle had smoked marijuana on several occasions the morning of the accident. None of the parties dispute this finding. As indicated above, we will not disturb the Workers' Compensation Court's findings of fact if they are supported by substantial credible evidence nor will we substitute our judgment for that of the WCC when the issue relates to the credibility of the witnesses. *Wunderlich,* 270 Mont. at 408,

892 P.2d at 566. We therefore affirm the WCC's finding that Hinkle was under the influence of marijuana at the time of his accident.

¶22 The third issue for our consideration is whether Hinkle's intoxication from drug use rendered him ineligible for workers' compensation benefits.

¶23 Thoreson claimed that Hinkle's non-prescription drug use the morning of the injury made Hinkle ineligible to receive workers' compensation benefits. He relied upon § 39-71-407(4), MCA (1995), which provides that:

> An employee is not eligible for benefits otherwise payable under this chapter if the employee's use of alcohol or drugs not prescribed by a physician is the major contributing cause of the accident. However, if the employer had knowledge of and failed to attempt to stop the employee's use of alcohol or drugs, this subsection does not apply.

He further claimed that he did not "have a chance" to observe Malatere or Hinkle when he arrived at the jobsite to determine which, if either, man was under the influence of drugs and whether they should be allowed to work.

¶24 The WCC concluded that 1) Hinkle's intoxication was a "major contributing cause" of his fall, 2) Thoreson had knowledge of either Hinkle's or Malatere's drug use on the morning of the injury, and 3) Thoreson had a duty to inquire who had been smoking marijuana and to bar that individual from working on the roof that day and from on-the-job drug use. The WCC found that Thoreson's smelling marijuana smoke on his porch constituted knowledge that one or both of the men smoking on his porch had smoked marijuana. Additionally, it held that Thoreson had both the opportunity (first, at the time he smelled the odor and, second, when he arrived at the jobsite, with the ladders, before any man had climbed onto the roof) and the duty to inquire which man had smoked the marijuana and to bar that person from working and further on-the-job drug use.

¶25 We conclude that the WCC relied on credible and sufficient evidence when it determined that Thoreson had knowledge of drug use but failed to inquire who was under the influence of drugs, and that he was therefore not entitled to rely upon the first sentence of § 39-71-407(4), MCA (1995). Even if we might disagree with the conclusion reached by the court, we will not disturb the WCC's findings of fact when supported by credible and sufficient evidence. *Wunderlich,* 270 Mont. at 408, 892 P.2d at 566.

¶26 We must now determine whether Hinkle had willful and wanton intent to injure himself.

¶27 We affirm the WCC's finding that Hinkle did not willfully and wantonly intend to injure himself. Judge McCarter heard the testimony of witnesses regarding this issue, determined which witnesses he found credible and which he did not, and ruled based upon the evidence presented. We state once again that we will not disturb the WCC's findings of fact if they are supported by substantial credible evidence nor will we substitute our judgment for that of the WCC when the issue relates to the credibility of the witnesses. *Wunderlich,* 270 Mont. at 408, 892 P.2d at 566.

¶28 Lastly, Thoreson's allegation of judicial bias exhibited by Judge McCarter was not raised in a timely manner and therefore, as we have done in numerous cases, we decline to consider it. *In Re Estate of Hill* (1997), 281 Mont. 142, 151, 931 P.2d 1320, 1326. The rule is well established that we do not consider issues raised for the first time on appeal. See *Unified Industries, Inc. v. Easley*, 1998 MT 145, ¶ 15, 289 Mont. 255, ¶ 15, 961 P.2d 100, ¶ 15. Moreover, Thoreson did not provide support for his claim in the form of affidavits until he filed his Reply Brief. A party may not raise new matters for the first time in his Reply Brief. Rule 23(c), M.R.App.P.

## CONCLUSION

¶29 For the reasons stated in this opinion, we affirm the WCC's Findings of Fact, Conclusions of Law and Judgment in this matter.

/S/ PATRICIA COTTER

We Concur:

/S/ KARLA M. GRAY

/S/ JIM REGNIER

/S/ JAMES C. NELSON

/S/ JIM RICE